**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

**NATHAN JAMES BREWSTER,**

    **Petitioner,**

                                                Case No. 1:04-cv-699
**v.**                                            Hon. Wendell A. Miles

**THOMAS BIRKETT,**

    **Respondent.**
_____/

**REPORT AND RECOMMENDATION**

Petitioner, a prisoner currently incarcerated at a Michigan correctional facility, has filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.

**I.**     **Background**

A jury convicted petition of: second-degree murder, M.C.L. § 750.317; two counts of first-degree felony murder, M.C.L. § 750.316(1)(b) (based on alternative theories of murder committed during the perpetration of either first-degree criminal sexual conduct ("CSC I") or first-degree child abuse); CSC I, M.C.L. § 750.520b(1)(a); first-degree child abuse, M.C.L. § 750.136b(2); and, arson of a dwelling house, M.C.L. § 750.72. At sentencing, the trial court vacated the convictions for second-degree murder, felony murder perpetrated during the perpetration of CSC I, and first-degree child abuse. Then, the court sentenced petitioner to mandatory life imprisonment without parole for the remaining felony murder conviction, life imprisonment for the CSC I conviction, and 140 to 240 months' imprisonment for the arson conviction.

The Michigan Court of Appeals summarized the evidence in the case as follows:

> Defendant was convicted of sexually assaulting and then killing the four-year-old daughter of his live-in girlfriend, and then setting the house where they lived on fire to cover up his crimes. It was the prosecution's theory that defendant, who was caring for the child while his girlfriend was at work, sexually assaulted the child with a potato peeler. When the child subsequently became upset and asked for her mother, defendant decided to cover up his crime and stabbed the child in the neck with the potato peeler. The child suffered additional blunt force trauma to the head and, when she did not immediately die from her wounds, defendant strangled her to death. Defendant then set the child's body on fire and also tried to burn down the home where they lived in order to further cover up his crimes. Others who saw the fire were able to prevent the structure from burning down and, although they were able to remove the victim's body from the fire, she had died before the fire started.
>
> At trial, defendant claimed that he accidentally stabbed the victim with the potato peeler when he fell on her, but denied otherwise physically or sexually abusing the child. He admitted starting the fire, but claimed that he did so only because he felt that his girlfriend could never forgive him for accidentally causing the child's death and believed that it was better that she not know how the child actually died.

*People v. Brewster*, No. 236186 (Mich. App. July 17, 2003), slip op. at 1-2.

Petitioner presented the following issues in his direct appeal to the Michigan Court of Appeals:

    I.    Should [petitioner's] convictions for criminal sexual conduct, and child abuse and their attendant felony murder convictions be reversed because there was insufficient evidence to find for them?

    II.    Should [petitioner's] convictions be reversed because the prosecutor's closing arguments were improper?

    III.    Should [petitioner's] convictions be reversed because the trial court abused its discretion in the admission of letters [allegedly] written by [petitioner]; abused its discretion in the denial of a defense request for a handwriting expert; erred in the finding of due diligence, and erred in denying the request for the appropriate jury instruction as to the missing witness?

*See* docket no. 22.

The Michigan Court of Appeals affirmed petitioner's convictions. *People v. Brewster,* No. 236186. Petitioner filed an application for leave to appeal to the Michigan Supreme Court raising these claims and the following two additional claims, to-wit:

   III.   Trial counsel was ineffective in that he [failed] to object to prosecutorial misconduct, and failed to pursue the matter of acquiring a [handwriting] expert.

   IV.   Appellate counsel were equally ineffective for having failed to raise a claim of ineffective assistance of trial counsel, even though [petitioner] asked him to was further ineffective for failing to inform defendant that he himself could raise same with clerical assistance.

The Michigan Supreme Court denied the application. *People v. Brewster*, No. 124562 (January 27, 2004).

Petitioner raises the following issues in his habeas petition:

   I.    Insufficient evidence to support convictions for: [CSC I]; first-degree child abuse and, their felony murder convictions.

   II.   Petitioner's convictions should be reversed because the trial court abused [its] discretion in the admission of letters allegedly written by petitioner; abused [its] discretion in denying [] a defense request for a handwriting expert; erred in the finding of due diligence[;] and erred in denying the request for the appropriate jury instruction as to the missing witness.

   **II.   Standard of review under 28 U.S.C. § 2254**

Petitioner seeks relief under 28 U.S.C. §2254, which provides that "a district judge shall entertain an application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." Before petitioner may seek such relief in federal court, however, he must first fairly present the substance of his claims to all available state courts, thereby exhausting all state remedies. *Picard v. Connor*, 404 U.S. 270, 277-78 (1981);

*Clemmons v. Sowders*, 34 F.3d 352, 354 (6th Cir. 1994); *see* 28 U.S.C. §2254(b)(1)(A).  Petitioner has met the exhaustion requirement as to the claims raised in the first issue, but not to the claims raised in the second issue.  For the reasons stated below, the court will address the merits of these unexhausted claims as permitted by 28 U.S.C. § 2254(b)(2).  *See* discussion, *infra*, at § III.B.1.

Where the state court has adjudicated a claim on its merits, the federal district court's habeas corpus review is limited by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which provides in pertinent part that:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication–
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A state court's decision is "contrary to" clearly established Federal law if the state court arrived at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decided the case differently than a Supreme Court decision based upon a set of materially indistinguishable facts.  *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000); *Lopez v. Wilson*, 426 F.3d 339, 341 (6th Cir. 2005) (*rehearing en banc*).  An unreasonable application of clearly established Federal law occurs "when the state court identified the correct legal principle from the Supreme Court but unreasonably applied the principle to the facts of the case before it." *Id.*

A determination of a factual issue by a state court is presumed to be correct. 28 U.S.C. § 2254(e)(1). A habeas petitioner has the burden of rebutting the presumption of correctness by clear and convincing evidence that the state court's determination was erroneous. *Magana v. Hofbauer*, 263 F.3d 542, 546-47 (6th Cir. 2001).

### III.    Petitioner's claims

#### A.    Sufficiency of the evidence

Plaintiff testified that he killed the victim by accidentally stabbing her in the throat with a potato peeler. Trial Trans. V at 796-98. Petitioner also testified that he set the house on fire so that the victim's mother would think that she died during an accidental house fire. *Id.* at 798-99. Petitioner contends that insufficient evidence exists to support his felony murder conviction, because the evidence does not establish beyond a reasonable doubt that he "wantonly, maliciously and purposefully murdered" the victim during the course of committing CSC I or first degree child abuse.

The Michigan Court of Appeals rejected these claims as follows:

> Defendant first argues that there was insufficient evidence to support his convictions for CSC I, first-degree child abuse, and felony murder. We disagree.
>
> An appellate court's review of the sufficiency of the evidence to sustain a conviction should not turn on whether there was any evidence to support the conviction, but whether there was sufficient evidence to justify a rational trier of fact in finding the defendant guilty beyond a reasonable doubt. *People v. Wolfe*, 440 Mich. 508, 513-514; 489 NW2d 748 (1992), *amended* 441 Mich. 1201 (1992). The evidence must be reviewed in a light most favorable to the prosecution. Id. at 515.
>
> CSC I requires sexual penetration in addition to one of the enumerated aggravating circumstances in M.C.L. § 750.520b(1). *People v. Proveaux*, 157 Mich.App 357, 360-361; 403 NW2d 135 (1987). The aggravating circumstance in this case was that the victim was under the age of thirteen years. MCL 750.520b(1)(a); *In re Hawley*, 238 Mich.App 509, 511; 606 NW2d 50 (1999). CSC I is a general intent crime. *People v. Sabin (After Remand)*, 463 Mich. 43, 68; 614

NW2d 888 (2000). " '[N]o intent is requisite other than that evidenced by the doing of the acts constituting the offense." ' *Id.* at 68-69, quoting *People v. Langworthy*, 416 Mich. 630, 644; 331 NW2d 171 (1982).

In the present case, the physical evidence showed that the victim had been sexually penetrated with an object before her death and had blood in her underpants at the time of her death. The victim did not have any signs of bleeding or trauma in her vaginal area when her mother left her with defendant earlier that day. Additionally, the victim could only have incurred these injuries before her body was set on fire. The only other person who was with the victim, apart from defendant, was the victim's younger sister, who was only an infant. Viewed in a light most favorable to the prosecution, this evidence, along with defendant's statements, was sufficient to enable the jury to determine beyond a reasonable doubt that defendant committed CSC I.

Defendant was also convicted of felony murder with first-degree child abuse as the predicate felony. Felony murder consists of the following elements:

> (1) [T]he killing of a human being, (2) with the intent to kill, to do great bodily harm, or to create a very high risk of death or great bodily harm with knowledge that death or great bodily harm was the probable result [i.e., malice], (3) while committing, attempting to commit, or assisting in the commission of any of the felonies specifically enumerated in [the statute]. [*People v. Carines*, 460 Mich. 750, 758-759; 597 NW2d 130 (1999) (citation and internal quotations omitted.]

The jury may infer malice from the facts and circumstances of the killing. *People v. Nowack*, 462 Mich. 392, 401; 614 NW2d 78 (2000).

First-degree child abuse is an enumerated felony in M.C.L. § 750.316. MCL 750.316(1)(b). "A person is guilty of child abuse in the first degree if the person knowingly or intentionally causes serious physical or serious mental harm to a child." MCL 750.136b(2). To convict a defendant of first-degree child abuse, the prosecution must show that the defendant specifically intended to seriously harm the victim. *People v. Maynor*, 256 Mich.App 238, 242-243; ___ NW2d ___ (2003). "Serious physical harm" includes a severe cut. M.C.L. § 750.136b(1)(f).[FN1]

The evidence in this case indicated that defendant stabbed the child in the neck with a potato peeler after sexually assaulting her, and then caused blunt force trauma to the child's head before finally strangling her to death. The evidence sufficiently demonstrated that defendant intentionally caused serious physical harm to the child before she was killed and, thus, was sufficient to sustain the jury's determination that defendant was guilty of first-degree child abuse.

The evidence was also sufficient to support defendant's conviction of felony murder. First, the evidence at trial indicated that the victim died before the fire was started. Second, the evidence that defendant stabbed the victim in the neck with a potato peeler, then caused additional blunt force trauma to her head, before finally strangling her to death, was unquestionably sufficient to prove that defendant acted with the requisite malice. *Carines*, *supra* at 758-759. Third, the evidence also demonstrated that the murder occurred during the perpetration of first-degree child abuse. Indeed, the victim's death was immediately connected to the abuse of the victim, which occurred as part of one continuous transaction. *See People v. Thew*, 201 Mich.App 78, 86-88; 506 NW2d 547 (1993).

Accordingly, the evidence was sufficient to convict defendant of CSC I and felony murder committed during the perpetration of first-degree child abuse.

Defendant also argues that the evidence was insufficient to support his felony murder conviction with CSC I as the predicate felony. We note that the trial court vacated that conviction. Nonetheless, the foregoing analysis likewise demonstrates that there was sufficient evidence to convict defendant of felony murder committed during the perpetration of CSC I.

*   *   *

[FN1] MCL 750.136b(1)(f) defines "serious physical harm" as any physical injury to a child that seriously impairs the child's health or physical well-being, including, but not limited to, brain damage, a skull or bone fracture, subdural hemorrhage or hematoma, dislocation, sprain, internal injury, poisoning, burn or scald, or severe cut.

*People v. Brewster*, No. 236186, slip op. at 2-3.

In *In re Winship*, 397 U.S. 358 (1970), the Supreme Court held that Fourteenth Amendment's Due Process Clause protects a criminal defendant against conviction "except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *Winship*, 397 U.S. at 364. Under *Jackson v. Virginia*, 443 U.S. 307 (1979), sufficient evidence supports a conviction if "after viewing the evidence in light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* at 319 (emphasis added). In determining whether sufficient evidence exists to support a conviction, the reviewing court must presume that the trier of fact resolved conflicting

inferences of fact in favor of the prosecution, and must defer to that resolution. *Wright v. West*, 505 U.S. 277, 296-97 (1992).

### 1.     **CSC I conviction**

First, petitioner contends that the only evidence of CSC I was presented by the pathologist, who testified that the injury occurred 24 to 48 hours before the victim's death and that the injury was above the her vagina. Petition at 7a-7b. Petitioner contends that this evidence "proves that sexual penetration of the victim did **not** occur." *Id.* (emphasis in original). Petitioner's argument is specious. It is undisputed that petitioner was at home with the victim at the time of her death. The victim's mother testified that the victim had no bleeding in the vaginal area when she went to bed the night before her death or when she got dressed that morning. Trial Trans. II at 253-55.

Waldemar Palutke, M.D., a forensic pathologist, performed an autopsy on the victim. Trial Trans. IV at 621, 624. During his examination of the victim's body, Dr. Palutke found "a small area, approximately a quarter of an inch area of superficial scrapes or abrasions just inside the lower part of the vagina." *Id.* at 625. Specifically, the abrasions were located "in the inferior or lower or back part of the front of the vagina just internal to the labia minora," in layman's terms "[j]ust inside the labia minora." *Id.* at 641-42. The doctor also examined the victim's vagina internally, and found a significant amount of soft tissue hemorrhaging at the base of the pelvis, indicating that the injury occurred from within the vaginal area. *Id.* at 643. The injury could have been caused by a potato peeler found at the victim's house [i.e., Exhibit 25]. *Id.* The injury could cause bleeding out of the vagina into an undergarment. *Id.* at 658. The doctor further stated that "[t]he internal hemorrhage

in the pelvis would not be consistent in my opinion with an injury inflicted after death." *Id.* at 658-59.

In addition, a jailhouse witness, Melvin Hampton, testified that petitioner admitted that he rubbed up against the victim, had the potato peeler in his hand, and was touching the victim's vaginal area with the potato peeler. Trial Trans. IV at 604-05.

Viewing this evidence in the light most favorable to the prosecution, a rational trier of fact could have found the essential elements of CSC I beyond a reasonable doubt. *Jackson*, 443 U.S. at 319.

### 2. First degree child abuse and felony murder

Second, petitioner contends that there was no evidence that he "intentionally stabbed the victim in the neck with the potato peeler," that the evidence "consistently supported" petitioner's testimony that he "accidentally tripped over the carpet while holding the potato peeler and stumbled into the victim," and that the stab wounds to the neck did not constitute "serious physical harm" sufficient to support first degree child abuse. *Id.* at 7c.

Dr. Palutke determined that the victim died from asphyxia, secondary to strangulation and a stab wound to the neck. Trial Trans. IV at 646. While the victim was burned, the burns occurred after her death. *Id.* at 626-27. The doctor found a stab wound in the victim's neck, which was irregular, consistent with a dull object like a potato peeler found at the victim's house [Exhibit 25]. *Id.* at 561, 628. Dr. Palutke determined that this wound was a cause of the victim's death. *Id.* at 630-31.

Petitioner told three individuals that he stabbed the victim in the neck. First, petitioner admitted to Detective Picketts that he stabbed the victim in the neck with a potato peeler, that he cleaned the peeler and put in the drainer. Trial Trans. III at 561. Second, petitioner later

told Deputy Butler that he accidentally slipped on a rug while holding a potato peeler, it went into the little girl's neck, and she was dead when he pulled it out. Trial Trans. IV at 599. Third, petitioner told Melvin Hampton that the victim started crying and asking for her mother when he touched her vagina with the potato peeler and that he stuck the girl in the neck with the potato peeler in his efforts to stop her crying. *Id.* at 606-07.

Viewing this evidence in the light most favorable to the prosecution, a rational trier of fact could have found the essential elements of first degree child abuse beyond a reasonable doubt. *Jackson*, 443 U.S. at 319.

### 3. Felony murder

Finally, petitioner contests the felony murder conviction on the ground that it lacked a predicate felony, in this case, first degree child abuse. As previously discussed, petitioner's conviction of this predicate felony is supported by sufficient evidence. Accordingly, the court rejects petitioner's claim that his felony murder conviction is not supported by sufficient evidence.

### 4. Conclusion

The Michigan Court of Appeals' resolution of this issue was neither contrary to, or an unreasonable application of, clearly established Federal law as determined by the Supreme Court; nor was the decision based on an unreasonable determination of the facts in light of the evidence presented. 28 U.S.C. § 2254(d). Accordingly, petitioner is not entitled to habeas relief on this claim.

### B. State law claims

Next, petitioner raises a number of state law claims related to certain letters written by him to the victim's mother: that the letters were improperly admitted under state law; that he was not provided a handwriting expert under state law; that the prosecutor violated state law by failing to exercise "due diligence" in obtaining a jailhouse witness; and that state law was violated when the court did not provide a limiting instruction regarding a missing witness. Petition at 7e-f.[1]

The Michigan Court of Appeals addressed these issues as follows:

> Defendant also argues that the trial court erred in admitting prosecution Exhibits 30A through 30E, which consisted of five letters with incriminating details about this offense. The letters were written on the back of legal paperwork belonging to defendant, and defendant's former girlfriend, who was familiar with defendant's handwriting, identified the handwriting on the exhibits as defendant's.
>
> The trial court did not abuse its discretion in admitting the exhibits. *People v. Hine*, 467 Mich. 242, 250; 650 NW2d 659 (2002). First, we disagree with defendant's claim that a proper foundation for admitting the letters was not established. The trial court properly found that defendant's former girlfriend's testimony identifying the handwriting as defendant's provided a sufficient foundation to support admission of the letters. MRE 901(b)(2).
>
> Second, we reject defendant's claim that the trial court erred in denying his request for a handwriting expert. At trial, defense counsel informed the court that he was going to attempt to locate a handwriting expert to testify in support of the defense position that defendant did not write the letters. He informed the court that funds to pay some of the expense of procuring an expert may be required. The court commented that the motion was brought quite late in the proceedings, but did not foreclose defendant from pursuing this testimony. Defendant had almost a week to locate an expert before the trial concluded, but an expert was never produced and the issue was never revisited. Defendant did not request that the court provide funding for an expert.

---

[1] The court notes that five letters were admitted as Exhibits 30 -A through 30-E. Trial Trans. IV at 567-73. It is alleged that petitioner wrote these letters and that they contain incriminating evidence. Petitioner's Memorandum at 18-20 (docket no. 2). However, the letters are not included in the court record. For purposes of this report and recommendation, the court will assume that the letters contained evidence linking petitioner to the crime.

Although a defendant may be entitled to the appointment of an expert witness to help with his case, *see People v. Jacobsen*, 448 Mich. 639, 641; 532 NW2d 838 (1995), here defendant never made a request for funding to pay for the services of a handwriting expert. An indigent defendant may not rely on a trial court's failure to appoint an expert on due process grounds absent a timely request to the court for expert assistance, the request is improperly denied, and the court's ruling renders the trial fundamentally unfair. *People v. Leonard*, 224 Mich.App 569, 584; 569 NW2d 663 (1997). Because defendant did not make a request for the court to appoint a handwriting expert, appellate relief is precluded absent a plain error affecting defendant's substantial rights. *Carines*, *supra*. Here, the existing record does not establish that there was an available handwriting expert who could have supported defendant's position that the letters were not written by him. Thus, defendant has failed to show a plain error affecting his substantial rights.

Third, we also reject defendant's argument that a new trial is required because the prosecution failed to produce a witness who had been an inmate at the county jail. Exhibits 30A through 30E were originally sent to that witness. Although the prosecution listed him as a witness, the prosecution could not locate him at the time of trial and asked the court to excuse his production. Following an evidentiary hearing, the court determined that the prosecution had exercised due diligence in attempting to locate and produce that witness and, accordingly, excused the prosecution from calling him. Defendant now argues that this decision was erroneous. We disagree.

Pursuant to M.C.L. § 767.40a(1) and (2), the prosecutor has a duty to disclose all known res gestae witnesses. Additionally, upon request by a defendant, the prosecutor must provide reasonable assistance in locating and serving process upon a witness. MCL 767.40a(5). *See also People v. Lawton*, 196 Mich.App 341, 347-348; 492 NW2d 810 (1992). However, the statute does not require the prosecutor to produce for trial all res gestae witnesses. Instead, the prosecution is only required to produce those witnesses included on its witness list. MCL 767.40a(3); *People v. Burwick*, 450 Mich. 281, 287-289, 292; 537 NW2d 813 (1995). Further, the due diligence standard no longer applies to the prosecution's witnesses. Instead, the prosecution is permitted to amend its witness list at any time for good cause. *Id.* at 292. *See also People v. Perez*, 255 Mich.App 703, 707, 709; ___ NW2d ___ (2003), and M.C.L. § 767.40a(4). In this case, however, we agree that both standards, due diligence and good cause, were satisfied.

The testimony at the evidentiary hearing established that the prosecution and the police did everything reasonable to attempt to locate the former inmate. The police began looking for him once it was clear that he would be a witness at trial. Leads were followed in both this state and North Carolina, where the witness was thought to have relocated after his release from custody. The information provided to the police suggested that the witness most likely fled the state and had gone into

>hiding because of problems he was having with others in this state. He also had an outstanding felony warrant. The evidence established that reasonable efforts were made to locate him. *People v. Bean*, 457 Mich. 677, 684; 580 NW2d 390 (1998). Thus, under either the due diligence standard or the test for good cause, the trial court did not err in excusing the prosecution from producing the former inmate as a witness.
>
>Lastly, the trial court did not err in refusing to give the missing witness instruction, CJI2d 5.12. *Perez*, *supra* at 708-711.

*People v. Brewster*, No. 236186, slip op. at 4-6.

### 1. **Lack of exhaustion**

In his supporting memorandum, petitioner contends that the trial court committed errors that denied him a fair trial in violation of the 14th Amendment. Petitioner's Memorandum at 21 (docket no. 2). As an initial matter, the court must determine whether this claim is exhausted for purposes of federal habeas review, that is, whether petitioner "fairly presented" this claim to the state courts. *See Whiting v. Burt*, 395 F.3d 602, 012 (6th Cir. 2005) ("[a]s a necessary component of the exhaustion of state remedies doctrine, a petitioner's claim must be 'fairly presented' to the state courts before seeking relief in the federal courts")..

In *McMeans v. Brigano*, 228 F.3d 674 (6th Cir. 2000), the Sixth Circuit identified four actions that a petitioner can take which are significant to the determination of whether the substance of a claim has been "fairly presented" to the state courts:

>(1) reliance upon federal cases employing constitutional analysis; (2) reliance upon state cases employing federal constitutional analysis; (3) phrasing the claim in terms of constitutional law or in terms sufficiently particular to allege a denial of a specific constitutional right; or (4) alleging facts well within the mainstream of constitutional law.

*McMeans*, 228 F.3d at 681 (citation omitted). However, "[g]eneral allegations of the denial of rights to a 'fair trial' and 'due process' do not 'fairly present' claims that specific constitutional rights were violated." *Id.*

Petitioner's state court appeal did not raise the violation of a federal constitutional right as an issue presented for appeal. Rather, petitioner contended that the state trial judge abused his discretion and violated state law in admitting the letters into evidence. The only reference to a federal constitutional violation appears at the end of his appellate brief, which states:

> Thus the combination of the admission of the letters, coupled with the lack of establishing the author of the letters and the testimony of the person who received the letters, denied defendant his due process rights, as guaranteed by both the federal and state constitutions, requiring reversal.

Appellate Brief at 28 (docket no. 22). Petitioner's reference to a his "due process rights" is a general allegation that did not "fairly present" a federal constitutional issue to the state courts. *McMeans*, 228 F.3d at 681. Under these circumstances, petitioner's 14th Amendment due process claim is unexhausted.

As a general rule, a habeas petition containing unexhausted claims should be dismissed without prejudice. *See Rose v. Lundy*, 455 U.S. 509, 518-20 (1982). However, under 28 U.S.C. § 2254(b)(2), federal courts have the discretion to deny habeas relief on the merits regardless of whether the petitioner has exhausted his state remedies. *See Jones v. Jones*, 163 F.3d 285, 299 (6th Cir. 1998). *See, e.g.*, *Farley v. Lafler*, 193 Fed.Appx. 543, 549 (6th Cir. 2006) ("[the]AEDPA clearly provides that the district court could hear the unexhausted jury instruction claim and deny it on its merits to avoid further litigation for the sake of efficiency"). In this case, the court should exercise its discretion to review petitioner's unexhausted claim pursuant to § 2254(b)(2), and deny it.

### 2. Petitioner's 14th Amendment claim

Federal habeas review is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States. *Estelle v. McGuire*, 502 U.S. 62, 68 (1991). "[F]ederal habeas corpus relief does not lie for errors of [s]tate law." *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990). "Trial court errors in state procedure and/or evidentiary law do not rise to the level of federal constitutional claims warranting relief in a habeas action unless the error renders the proceeding so fundamentally unfair as to deprive the petitioner of due process under the Fourteenth Amendment." *McAdoo v. Elo*, 365 F.3d 487, 494 (6th Cir. 2004).

Here, the Michigan appellate courts determined that the trial court did not commit any errors of state law in admitting the letters. The state courts are the ultimate expositors of state law in federal habeas proceedings. *Mullaney v. Wilbur*, 421 U.S. 684, 691 (1975). "[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." *Estelle*, 502 U.S. at 67-68. Absent an error of state law, there is no basis to conclude that the trial court deprived petitioner of due process under 14th Amendment. *Estelle*, 502 U.S. at 68; *Lewis*, 497 U.S. at 780 (1990); *McAdoo*, 365 F.3d at 494. Accordingly, petitioner's claims raised in Issue II should be denied.

### V. Recommendation

I respectfully recommend that petitioner's habeas petition be **DENIED**. Rule 8, Rules Governing § 2254 Cases in the United States District Courts.


Dated: January 3, 2008  /s/ Hugh W. Brenneman, Jr.
HUGH W. BRENNEMAN, JR.
United States Magistrate Judge

ANY OBJECTIONS to this Amended Report and Recommendation must be served and filed with the Clerk of the Court within ten (10) days after service of the report.  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order.  *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).